734 P.2d 1258

**Archie VALDEZ, Plaintiff-Appellant,**

**v.**

**CILLESSEN & SON, INC., a New Mexico corporation, Defendant-Appellee.**

**No. 16617.**

Supreme Court of New Mexico.

Feb. 25, 1987.

Rehearing Denied April 10, 1987.

Simon and Oppenheimer, Morton Simon, Melinda J. Silver, Santa Fe, for plaintiff-appellant.

Donald D. Montoya, Montoya, Murphy, Kauffman & Garcia, Santa Fe, for defendant-appellee.

## OPINION

WALTERS, Justice.

This case was certified to us on interlocutory appeal to determine the propriety of summary judgments granted in favor of defendant on certain of plaintiff's claimed causes of action, and the denial of summary judgment on a remaining count. Both parties appeal. We affirm in part and reverse in part.

*Facts*

Defendant Cillessen and Son, Inc. contracted with the Indian Housing Authority to construct housing at Picuris Pueblo, Cillessen subcontracting the lathing and plastering work to All State Lathing and Plastering. All State hired plaintiff Archie Valdez as a lather and plasterer, and on May 2, 1984, a lean-to scaffolding, which was owned and had been erected by All State, collapsed beneath Valdez and he was injured. All State did not carry workmen's compensation insurance. After All State had filed a petition in bankruptcy, Valdez amended his complaint against Cillessen and other defendants to name only Cillessen as defendant, and alleged the following six counts:

**Count I:** Alleges that Cillessen, as the general contractor, knew or should have known of dangerous construction of the scaffolding, and failed to warn plaintiff or to take any other steps to prevent exposure to danger and is, therefore, liable in compensatory and punitive damages.

**Count II:** Alleges that Cillessen was negligent per se, predicating the claim on Cillessen's alleged violation of state and federal regulations concerning the type of scaffolding that should have been used, and claims compensatory and punitive damages for Cillessen's gross negligence.

**Count III:** Alleging that Cillessen retained the right of control over All State, plaintiff claims All State was Cillessen's agent and, therefore, is vicariously liable in compensatory and punitive damages.

**Count IV:** Asserts that Cillessen negligently hired All State, and is liable for compensatory and punitive damages.

**Count V:** Alleges that Valdez was a third party beneficiary of the contract between Cillessen and Indian Housing Authority requiring workmen's compensation coverage, and Cillessen breached the contract.

**Count VI:** Alleges that Valdez was a third party beneficiary of the contract between Cillessen and All State requiring workmen's compensation coverage, and Cillessen breached the contract.

The trial court granted defendant's motion for summary judgment on Counts II–VI and on the issue of punitive damages in Count I. These judgments were certified for interlocutory appeal. Accordingly, Valdez appeals the summary judgments granted, and Cillessen cross-appeals denial of the summary judgment on the remainder of Count I.

### I.

With respect to Count II, Valdez contends that genuine issues of fact and law exist regarding violations of OSHA regulations. He argues that the alleged violations constitute negligence per se; therefore, it was error for the trial court to grant summary judgment on Count II of the complaint.

■ Citing *Archibeque v. Homrich*, 88 N.M. 527, 543 P.2d 820 (1975), Valdez says that negligence per se is "easily applicable" to this case, because all of the elements are present. In *Archibeque* we stated the test for finding negligence per se:

(1) there must be a statute which prescribes certain actions or defines a standard of conduct, either explicity or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the legislature through the statute sought to prevent.

*Id.* at 532, 543 P.2d at 825.

Cillessen, claiming it has never conceded there was a violation of the New Mexico Occupational Health and Safety Act, NMSA 1978, Sections 50–9–1 to –25 (Orig. Pamp. and Cum.Supp.1985), or The Federal Occupational Safety and Health Act (OSHA), 29 U.S.C. Sections 651 to 678 (1982), argues that if there were OSHA violations, it was All State who violated them, not Cillessen. Cillessen contends that violations of regulations promulgated under federal authority may not be used to create civil liability, and that the New Mex-

ico codification of OSHA does not allow the creation of civil liability based upon our act. *See* NMSA 1978, § 50–9–21.

The federal regulations and the New Mexico regulations contain substantially the same language. Section 50–9–21 of the New Mexico Act reads:

Nothing in the Occupational Health and Safety Act shall be construed or held to * * * enlarge or diminish or affect in any other manner the common law or statutory rights, duties or liabilities of employers and employees under the laws of this state with respect to injuries, occupational or other diseases, or death of employees arising out of or in the course of employment. (Citations omitted.)

In similar language, 29 U.S.C. Section 653(b)(4) of the Federal Act provides:

Nothing in this chapter shall be construed to * * * enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

In support of its argument, Cillessen relies on *Gutierrez v. Kent Nowlin Construction Co.*, 99 N.M. 394, 658 P.2d 1121 (Ct.App.1981), *rev'd on other grounds*, 99 N.M. 389, 658 P.2d 1116 (1982) (jury instruction permissible which instructs the jury that it may consider a violation of federal OSHA standards as evidence of negligence). "[T]he instruction did not, by any stretch of the imagination, tell the jury that violation of the standards was in and of itself negligence." *Id.* at 402, 658 P.2d at 1129); *Casillas v. S.W.I.G.*, 96 N.M. 84, 628 P.2d 329 (Ct.App.), *cert. denied*, 96 N.M. 116, 628 P.2d 686 (1981) (violation of the New Mexico Occupational Health and Safety Act cannot serve as the basis of an increase in benefits under the Workmen's Compensation Act); *Arvas v. Feather's Jewelers*, 92 N.M. 89, 582 P.2d 1302 (Ct. App.1978) (in dicta, the court noted that there was no legislative intent to allow civil actions based on violations of New Mexico OSHA standards).

Valdez distinguishes *Arvas v. Feather's Jewelers* on the basis that plaintiff there claimed negligence per se on "the general language in OSHA" whereas Valdez has "presented specific OSHA violations."

The courts are not in agreement on the question whether OSHA violations constitute negligence per se. *Compare Kelley v. Howard S. Wright Construction Co.,* 90 Wash.2d 323, 582 P.2d 500 (1978); *with Wendland v. Ridgefield Construction Services, Inc.,* 184 Conn. 173, 439 A.2d 954 (1981). We believe the better reasoned view to be, however, that OSHA violations do not constitute a basis for assigning negligence as a matter of law.

In *Wendland,* the Connecticut Supreme Court declared that a negligence per se theory of liability "operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles * * *." *Id.* at 178, 439 A.2d at 956. An instruction on negligence per se would affect the standard of care and thus affect "common law rights, duties and liabilities of employers * * *." *Id.* at 178–79, 439 A.2d at 956–57. Although the *Wendland* court refused to allow a claim of negligence per se to rest upon the alleged violation of OSHA regulations, it did hold that evidence of violation of OSHA regulations could be considered in determining the required standard of care.

To negate the defendant's general standard of care and impose negligence as a matter of law in a case such as this, *cf. Silva v. City of Albuquerque,* 94 N.M. 332, 610 P.2d 219 (Ct.App.1980), based upon an OSHA violation, would "affect ... the common law * * * duties * * * or liabilities of employers" and would be contrary to the clear intent of Congress. *See* 29 U.S.C. § 653(b)(4) (1982).

Even though OSHA violations would be admissible against Cillessen as evidence on the question of negligence under both the federal and state Acts, summary judgment on the theory pleaded in Count II was not improper. *Wendland v. Ridgefield Construction Services, Inc.*

## II.

The allegations of Count I and Count III effectively state the same claim. The trial court, however, denied summary judgment on Count I and granted summary judgment on Count III.

Valdez's theory under Count I was that Cillessen, having general contractor control over the project, should have been aware that the lean-to scaffolding was in violation of state and federal OSHA regulations, and that Cillessen should have warned Valdez of the hazard. In Count III, Valdez alleged that Cillessen's right of control over All State made All State Cillessen's agent, implying that negligence of All State was therefore negligence of Cillessen.

With respect to Count I, Valdez notes the general rule that a general contractor is not liable for an injury sustained by a subcontractor's employee, *Tipton v. Texaco,* 103 N.M. 689, 712 P.2d 1351 (1985), but asserts exceptions to the rule upon which to claim Cillessen's liability. *See Fresquez v. Southwestern Industrial Contractors and Riggers, Inc.,* 89 N.M. 525, 554 P.2d 986 (Ct.App.), *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976). Two of the exceptions are found in the Restatement (Second) of Torts Sections 414 and 424 (1965).

Section 414 provides:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Section 424 provides:

One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

In Count III an agency relationship was raised by the allegation that Cillessen had retained the right to control the method and manner of All State's work, thus becoming liable for All State's negligence.

In both Count I and Count III the critical issue is the degree of control alleged to have been maintained by Cillessen. Valdez contends that there is an issue of material fact regarding that control; in opposition, Cillessen maintains that there is no such genuine issue of fact.

■ Although it is true that, generally, the employer of an independent contractor is not liable for injuries to an employee of the independent contractor, this does not mean that he is absolutely shielded from liability. *See Moulder v. Brown*, 98 N.M. 71, 644 P.2d 1060 (Ct.App.1982). If he has the right to, and does, retain control of the work performed by the independent contractor, he owes the duty of care to the independent contractor's employee which, if breached, can result in liability to the employee. *Moulder v. Brown.* That theory of liability is expressed in Restatement (Second) of Torts Section 414 (1965). Comment (b) of that section notes:

> The rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself. *So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition,* and fails to exercise reasonable care either to remedy it himself or by the exercise of his

control cause the subcontractor to do so. (Emphasis added.)

In some cases, the trial court can decide as a matter of law whether the employer of an independent contractor owes a duty to an employee of an independent contractor. *See Moulder v. Brown.* "But where the facts are disputed ... it is not the function of the trial court to weigh the evidence in a summary judgment proceeding." *Id.* at 73, 644 P.2d at 1062. On a motion for summary judgment the opposing party is given the benefit of all reasonable doubt when determining whether a genuine issue of material fact exists, *Poorbaugh v. Mullen,* 96 N.M. 598, 633 P.2d 706 (Ct.App.1981), and the motion cannot be granted if such a factual issue is in dispute. *Paperchase Partnership v. Bruckner,* 102 N.M. 221, 693 P.2d 587 (1985).

■ It is undisputed that All State purchased, owned, and erected the scaffolding which caused the injury to Valdez. Cillessen argues that those facts alone warrant summary judgment on Count I. Cillessen urges us to apply the rule of *Fresquez v. Southwestern Industrial Contractors and Riggers, Inc.,* wherein the court held that liability would not be imposed on the general contractor when the injury to a subcontractor's employee occurred from faulty equipment owned and operated by the subcontractor performing inherently dangerous work. At this point, *Fresquez* is not applicable. We are concerned first with Cillessen's *right to control* the work of All State. If there was such control, Cillessen could be held liable if he knew or should have known of the unsafe condition created by All State. *Cf. Tipton v. Texaco. See also* Restatement (Second) of Torts § 414 comment b (1965).

Evidence in the record regarding the control of Cillessen over the work of All State shows that Cillessen agreed to be ultimately responsible for any infractions by All State of labor standards provisions contained in the contract between Cillessen and Indian Housing Authority. Cillessen issued detailed instructions to All State

concerning its work, including directions regarding the required temperature to apply stucco, the manner in which scaffolding should be erected so as not to interfere with other work, the type of cement to be used, the type of lime to be used, how to apply building paper and mesh, how to mix cement and sand for proper application of the stucco, how the stucco should be applied, and what should be done in the event the stucco needed to be repaired.

There was also a showing that Cillessen, through its superintendent at the job site, fired the employees of subcontractors, instructed employees on how, when, and where to do their jobs, and assigned employees to tasks other than those which they had been hired to do.

Viewing this evidence in the light most favorable to Valdez, it appears that there are genuine issues of fact regarding the extent of control by Cillessen. We are satisfied that the trial court properly denied summary judgment on Count I.

Having already noted that the critical issue under both Count I and Count III is the retention of control by Cillessen over All State's work, and that Counts I and III depend to a considerable extent upon the same evidence, we necessarily conclude that the trial court improperly granted summary judgment on Count III. Accordingly, summary judgment on Count III is reversed and is remanded for further proceedings therein.

### III.

■ Under Count IV, referring again to Restatement (Second) of Torts, Valdez argues that Cillessen negligently hired All State. Section 411 of the Restatement reads:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

> (b) to perform any duty which the employer owes to third persons.

We said in *New Mexico Electric Service Co. v. Montanez,* 89 N.M. 278, 551 P.2d 634 (1976), that an employee of an independent contractor is not a third party under Restatement (Second) of Torts, Sections 413, 416 and 427 (1965). Those sections describe the duty of a general contractor to third parties when the work is inherently dangerous. In *Montanez,* we quoted with approval the following from *King v. Shelby Rural Electric Cooperative Corp.,* 502 S.W.2d 659, 663 (Ky.1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974):

> There does not seem to be any valid reason why an employer of an independent contractor for the performance of specific work should be subjected to a greater liability than he would have if he had utilized his own employees on that particular work.

89 N.M. at 282, 551 P.2d at 638.

The general contractor is not an insurer of the employees of an independent contractor. *See Tipton v. Texaco.* Nor should he be penalized in a case, such as the one here, for the independent contractor's failure to obtain workmen's compensation insurance. *New Mexico Electric Service Co. v. Montanez.*

As a matter of law, then, Valdez was not a third party to whom Cillessen might become liable for failure to hire a competent and careful subcontractor, unless it should be found under Count III that All State was only an agent, not a subcontractor of Cillessen's. In that event, Valdez might be able to recover under Cillessen's workmen's compensation coverage, if such coverage exists, but he still could not prevail on the theory pleaded in this count. *Id.* Consequently, we affirm summary judgment on Count IV.

### IV.

In Counts V and VI, Valdez claims he is a third party beneficiary under the Cilles-

sen-Indian Housing Authority contract and the Cillessen-All State contract, citing *Hoge v. Farmers Market and Supply Co.*, 61 N.M. 138, 296 P.2d 476 (1956). Additionally, he maintains that the contracts are ambiguous regarding the parties' intent, and parole evidence should be allowed to clarify the intention of the parties. *See id.*

Cillessen concedes that Valdez may be an incidental beneficiary, but disputes that he is a third party beneficiary. Cillessen relies on *McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972), as support for his argument that nothing in the documents indicates that the motivating cause of the contracts was to benefit Valdez.

 The paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries. *See McKinney v. Davis; see also Hoge v. Farmers Market and Supply Co.* Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary. *See Hoge v. Farmers Market & Supply Co.*

Section 24 of the contract between Indian Housing Authority and Cillessen provides:

*Sec. 24. Insurance*

(a) Before commencing work, the Contractor and each of his subcontractors shall furnish the IHA with evidence showing that the following insurance is in force and will cover all operations under the Contract:

(1) Workmen's Compensation Insurance in accordance with applicable laws.

In the Cillessen-All State contract, the following appears:

12. The Subcontractor shall carry and pay for workmen's compensation and public liability insurance, with satisfactory limits and in acceptable companies.... The Subcontractor shall furnish the Contractor with certificates showing names of the carriers, numbers of the policies and expiration dates.

 Although Cillessen points to *McKinney v. Davis* as the "singularly relevant" New Mexico case on this issue, and contends that it is controlling, we do not agree. In *McKinney*, the contract explicitly provided that the required insurance was to protect plaintiff's employer, the defendant in that case. Clearly, there was no ambiguity with respect to the intended beneficiary under that term in the contract. In the present case nothing in either of the Cillessen contracts indicates which workmen were to be protected by the workmen's compensation provisions of those contracts. The intentions of the parties to both contracts are unclear; therefore, other evidence may be considered to clarify the ambiguities and determine what the parties intended. *Schaefer v. Hinkle*, 93 N.M. 129, 597 P.2d 314 (1979). When construction of an agreement depends upon extrinsic evidence, the terms of the agreement become a question of fact for the trier of fact to decide. *Paperchase Partnership v. Bruckner.*

If one of the purposes of Section 24 of the Indian Housing Authority-Cillessen contract was to protect the workers of subcontractors in case of injury on the job, a genuine issue of material fact exists. The same would hold true with respect to the ambiguity in the Cillessen-All State contract. Ergo, the grant of summary judgment on Counts V and VI was improper. *See Paperchase Partnership v. Bruckner.* Those judgments are therefore reversed and remanded for further proceedings.

**V.**

Lastly, on the propriety of awarding summary judgment against plaintiff for his claim of punitive damages under Count I, Valdez argues that All State's acts and omissions, as Cillessen's agent, rose to the level of gross negligence, thus presenting a factual issue to be decided after trial and not on a motion for summary judgment.

 We agree that recovery for punitive damages may be based upon gross

negligence, *Ruiz v. Southern Pacific Transportation Co.*, 97 N.M. 194, 638 P.2d 406 (Ct.App.), *cert. quashed,* 97 N.M. 242, 638 P.2d 1087 (1981), and that gross negligence may sometimes be shown by violation of a statute, depending on the circumstances, *see Hernandez v. Brooks*, 95 N.M. 670, 625 P.2d 1187 (Ct.App.), *cert. quashed,* 94 N.M. 675, 615 P.2d 992 (1980). That is a fact question to be resolved by the jury. *Id.*

■ Valdez, as the opposing party, is not required upon motion for summary judgment to prove his case. The burden is on the moving party to show, by affidavit or other evidence, that no material issue of fact remains on the matter to be decided. *Security Bank & Trust v. Parmer,* 97 N.M. 108, 637 P.2d 539 (1981). We have said that fact issues remain concerning the degree of Cillessen's control. Depending upon the jury's determination of that issue, the decision on whether or not Cillessen could be found to be responsible for wilful, wanton conduct or utter disregard of plaintiff's safety must be held in abeyance. If, upon trial of the issues remaining in this case, it appears that insufficient evidence has been adduced to show the necessary control that would permit the jury to reach the questions of such indifference or disregard on defendant's part, or any obligation to provide a safe place or to warn of a dangerous condition, the trial court may then dismiss the claim for punitive damages. *See Ruiz v. Southern Pacific Transportation Co.*

In summary, the trial court's grant of summary judgment on punitive damages in Count I was error and is reversed. The trial court's grant of summary judgment on Counts II and IV is affirmed and its grant of summary judgment on Counts III, V, and VI is reversed. Counts I, III, V and VI are remanded for reinstatement and trial. IT IS SO ORDERED.

SCARBOROUGH, C.J., SOSA, Senior Justice and RANSOM, J., concur.

STOWERS, J. specially concurs in part and dissents in part.

STOWERS, Justice, specially concurring in part and dissenting in part.

I concur with the portions of the majority's opinion holding that summary judgments were inappropriate on Counts I, III and V and with the majority's decision to affirm the trial court's summary judgments on Counts II and IV. However, I believe that the trial court properly could have concluded from the language of the Cillessen—All State contract alone that Cillessen made no promise that Valdez could enforce by bringing an action in contract against Cillessen. I therefore believe that the trial court did not err in granting summary judgment in favor of Cillessen on Count VI, and dissent from the majority's disposition of that count.

I agree with the majority that both the Cillessen—All State and Cillessen—Indian Housing Authority contracts are distinguishable from the contract at issue in *McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972), because they do not explicitly describe the intended beneficiaries of their provisions regarding workmen's compensation insurance. Under these circumstances, I agree that the third party may show by extrinsic evidence that the parties to the contract intended those provisions for his benefit. *See Permian Basin Investment Corp. v. Lloyd*, 63 N.M. 1, 7, 312 P.2d 533, 537 (1957); *see also Stotlar v. Hester*, 92 N.M. 26, 30, 582 P.2d 403, 407 (Ct.App.), *cert. denied,* 92 N.M. 180, 585 P.2d 324 (1978). However, the parties' intention to benefit Valdez was not the issue determinative of Cillessen's motion for summary judgment on Count VI.

The trial court's grant of summary judgment on Count VI was proper, I believe, because it is clear from the language of the contract itself that, although he may have had a right of action against All State, Valdez had no right of action against Cillessen as a third party beneficiary of the Cillessen—All State contract. This Court long has held that an action lies against the promisor by the third party to enforce the promise made for his benefit. *See John-*

*son v. Armstrong & Armstrong*, 41 N.M. 206, 210, 66 P.2d 992, 994 (1937); *see also* Restatement (Second) of Contracts §§ 304, 307 (1979); 4 A. Corbin, *Corbin on Contracts* §§ 773, 775, 782 (1951); 2 S. Williston, *A Treatise on the Law of Contracts* §§ 347, 356–359, 364A, 368 (3d ed. 1959). This right of action is premised upon a recognition that the third party who in fact suffers from the promisor's breach of his contractual obligations has greater incentive to enforce the contract and to carry out the intentions of the promisee than does the promisee. *See* 4 A Corbin, *supra,* § 775, at 8; 2 S. Williston, *supra,* § 357, at 843–44.

In paragraph 12 of the Cillessen—All State contract, the subcontractor, All State, promised to carry and pay for workmen's compensation insurance and to furnish the contractor, Cillessen, with evidence of its insurance policies. Nowhere in the contract, however, did Cillessen promise to compel All State to perform its promises regarding workmen's compensation insurance. Whether an agreement is ambiguous is a question of law for the trial court, as is the construction of an unambiguous contract. *See Boatwright v. Howard*, 102 N.M. 262, 264, 694 P.2d 518, 520 (1985); *see also McKinney v. Davis*, 84 N.M. at 353–54, 503 P.2d at 333–34. The trial court here properly could have concluded that the contract was unambiguous, and properly could have found in its language no promise by Cillessen to act for the benefit of Valdez.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Westgate Families v. County Clerk*, 100 N.M. 146, 148, 667 P.2d 453, 455 (1983); NMSA 1978, Civ. P.R. 56 (Repl.Pamp.1980). Because the construction of the Cillessen—All State contract presented a question of law, not fact, and because Valdez had no right of action against Cillessen to enforce promises made to, not by, Cillessen, I believe that the trial court did not err in granting a summary judgment in favor of Cillessen on Count VI.

On the other hand, in paragraph 24 of the Cillessen—Indian Housing Authority contract, the contractor, Cillessen, promised to furnish the Indian Housing Authority with evidence that workmen's compensation insurance was in force and would cover all operations under that contract. An action may lie against the promisor, Cillessen, to enforce this promise. Because the construction of this ambiguous contractual promise made by Cillessen and the intention of the parties to benefit Valdez raised material questions of fact, I agree with the majority that the trial court erred in granting a summary judgment in favor of Cillessen on Count V.

For the foregoing reasons, I believe that the majority correctly disposed of Counts I through V but that the trial court's ruling on Count VI should be affirmed. Therefore, I respectfully dissent in part.